IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | ) | |
|---|---|---|
| THOMAS VIVIRITO, | ) | |
| | ) | |
| *Petitioner*, | ) | |
| | ) | |
| v. | ) | No. 24 C 7540 |
| | ) | |
| UNITED STATES OF AMERICA, | ) | Chief Judge Virginia M. Kendall |
| | ) | |
| *Respondent*, | ) | |

## MEMORANDUM OPINION & ORDER

Thomas Vivirito petitions this Court under 28 U.S.C. § 2255 alleging ineffective assistance of counsel in violation of the Sixth Amendment. (Dkts. 1, 2). To support the Petition, Vivirito argues that his prior counsel should have moved to recuse this Court prior to his sentencing based on her special knowledge of crimes against children and the past provision of therapy dogs to sit with witnesses and victims identified by the United States Attorney's Office. Specifically, Vivirito claims that the Court's occasional provision of therapy dogs to the United States Attorney's Office in the past, in addition to this Court's experience and expertise in the matters of child pornography and child sexual exploitation, are grounds for recusal. Additionally, Vivirito filed a motion seeking this Court's recusal for his § 2255 motion itself. (Dkt. 5). For the reasons stated below, the Court denies both the Petition for habeas relief [1] and his motion for recusal [5].

### BACKGROUND

From 2018 through 2019, Vivirito used social-media and messaging applications to solicit sexual images and videos—including child pornography—from at least fifteen minor girls. *United States v. Vivirito*, 65 F.4th 341, 342 (7th Cir. 2023). In communicating with the minors, Vivirito lied about his age—claiming to be a teenager despite being a grown man in masturbating andsent

1

explicit messages about wanting to meet in person and "fu\*\*;" he also sent images of his penis and videos of himself masturbating and solicited and received videos and images of the minor girls engaging in sexually explicit conduct. (Case No. 19-CR-00728-1, Dkt. 125 at 2–8, hereinafter "Plea Agreement"). During this time, he amassed a large collection of child pornography, which included sadistic and masochistic videos and images of children. (Dkts. 2 at 2–3; 11 at 2). Accordingly, the United States indicted Vivirito on five counts: sexual exploitation of a minor under 18 U.S.C. § 2251(a) (Count One); enticement of a minor under 18 U.S.C. § 2422(b) (Count Two); receipt of child pornography under 18 U.S.C. § 2252A(a)(2)(A) (Count Three); and two counts of possession of child pornography under 18 U.S.C. § 2252(a)(5)(B) (Counts Four and Five). (Dkts. 2 at 2; 11 at 2–3; *see also* Plea Agreement).

At sentencing, the Government and the Probation Office agreed that Defendant's total offense level was 42, which—combined with his criminal history category of I—resulted in an advisory range of 360 months to life. (Case No. 19-CR-00728-1, Dkt. 136 at 8, hereinafter "Sentencing Memorandum"). They further agreed that after accounting for the statutory maximum sentence of 20 years, Defendant's Advisory Guidelines sentence was 240 months' or 20 years' imprisonment. (*Id.*) In light of the various Section 3553(a) factors, including the seriousness of Defendant's criminal conduct; the sheer number of minor girls defendant groomed, manipulated, and pressured into producing sexually explicit images, behavior that Defendant continued even after law enforcement intervention; and the trauma he thereby inflicted, the government recommended the Guidelines (and statutory maximum) sentence of 20 years. (Sentencing Memorandum at 14-15).

Pursuant to an agreement, Vivirito pleaded guilty to Count Three while stipulating to the activity underlying Counts One and Two for sentencing purposes. (Dkt. 11 at 3; *see also* 1:19-cr-

00728, Presentence Investigation Report, Dkt. 128 at 10–11 (sealed)). *See* U.S.S.G. § 1B1.2(c).[1] Prior to entering a final sentence, this Court noted that the Guidelines suggested 30 years to life for the overall stipulated activity, a sentence far more significant than the one Vivirito eventually received, but that the guilty plea to Count Three capped Vivirito's sentence at a 20-year statutory maximum. (Dkt. 11 at 5–6).

The Court then heard from the parents of one minor victim, who spoke about Defendant's methods of manipulation that he used to induce girls to create and send sexually explicit images, as well as the painful consequences that his victims experienced, including having to be catalogued in the NCMEC database in case their images were circulated on the Internet, as well as their need for "countless therapy sessions." (Case No. 19-CR-00728-1, Dkt. 170 at 28–31, hereinafter "Sentencing Transcript"). Defendant's mother also spoke on his behalf, expressing her sadness for the victims and seeking to assure the court that Defendant was "no longer the child he was at the time that these incidents took place" and had "finally become physically [and mentally] healthy." (*Id*. at 33–35).

The Government recommended the full 20-year statutory maximum sentence, which accounts for the "sadistic or masochistic conduct" enhancement under Guideline § 2G2.1(b)(4)(A). (Dkt. 11 at 4). Vivirito argued for the five-year mandatory minimum sentence. (Dkt. 2 at 3). Ultimately, accounting for the severity of the crimes as well as Defendant's ongoing health issues, this Court imposed a below-Guidelines sentence of 18 years in prison. (Dkts. 2 at 3; 11 at 5–6).

Vivirito's plea agreement included the waiver of his right to appeal with exceptions for challenging the sado-masochistic matrial enhancement and bringing claims of ineffective counsel.

---

[1] The relevant provision reads as follows: "A plea agreement (written or made orally on the record) containing a stipulation that specifically establishes the commission of additional offense(s) shall be treated as if the defendant had been convicted of additional count(s) charging those offense(s)." U.S.S.G. § 1B1.2(c).

(Dkt. 2 at 2). Vivirito utilized both, first challenging the application of the sadomasochistic materials enhancement under Guideline § 2G2.1(b)(4)(A). *See Vivirito*, 65 F.4th at 342–43. The Seventh Circuit rejected his argument, holding that this Court committed neither clear error nor abuse of discretion in finding that videos of Minor A penetrating herself with a hairbrush depicted sadistic or masochistic conduct, and that "[t]he district judge was entitled to take mental harm into account." Id. at 343. Defendant's sentence was thus affirmed. *Id.*

Once the Seventh Circuit rejected Vivirito's challenge to the applicability of the sado-masochism enhancement on direct appeal, *United States v. Vivirito*, 65 F.4th 341, 342–43 (7th Cir. 2023), Vivirito brought this claim of ineffective counsel under 28 U.S.C. § 2255. (Dkt. 1 at 8).

## LEGAL STANDARD

Under 28 U.S.C. § 2255, a person in custody may move the sentencing court to vacate, set aside, or correct a sentence. The Court may grant relief pursuant to § 2255 when "'the sentence was imposed in violation of the Constitution or laws of the United States,' the court lacked jurisdiction, the sentence was greater than the maximum authorized by law, or it is otherwise subject to collateral attack." *Torzala v. United States*, 545 F.3d 517, 521 (7th Cir. 2008) (quoting 28 U.S.C. § 2255(a)). In reviewing a § 2255 petition, the Court may "deny an evidentiary hearing where the motion, files, and records of the case conclusively show that the prisoner is entitled to no relief." *Koons v. United States*, 639 F.3d 348, 355 (7th Cir. 2011) (quoting *Torzala*, 545 F.3d at 525; 28 U.S.C. § 2255(b)).

A defendant's "failure to raise an ineffective-assistance-of-counsel claim on direct appeal does not bar the claim from being brought in a later, appropriate proceeding under § 2255." *Massaro v. United States*, 538 U.S. 500, 508–09 (2003); *see also Peoples v. United States*, 403 F.3d 844, 848 (7th Cir. 2005) ("[A] defendant never forfeits a claim of ineffective assistance

4

by waiting until collateral attack."). This is true "whether or not there is new counsel and whether or not the basis for the claim is apparent from the trial record." *Massaro*, 538 U.S. at 503–04. If a defendant raises an ineffective-assistance claim on direct appeal, the claim "may not be presented a second time on collateral attack under 28 U.S.C. § 2255." *United States v. Cates*, 950 F.3d 453, 457 (7th Cir. 2020). Thus, the Seventh Circuit has "repeatedly warned defendants against bringing ineffective-assistance claims on direct appeal." *Id.* at 457 (collecting cases).

To show constitutionally ineffective counsel, the petitioner must first demonstrate that his "counsel's representation fell below an objective standard of reasonableness." *Strickland v. Washington*, 466 U.S. 668, 688 (1984). The proper measure of representation "remains simply reasonableness under prevailing professional norms." *Id*. The standard of review is high: "[j]udicial scrutiny of counsel's performance must be highly deferential." *Id*. at 689. "[A] counsel's representation 'need not be perfect, indeed not even very good, to be constitutionally adequate.'" *Delatorre v. United States*, 847 F.3d 837, 845 (7th Cir. 2017) (quoting *McAffee v. Thurmer*, 589 F.3d 353, 355–56 (7th Cir. 2009)). Even if a counsel's actions were professionally unreasonable, the petitioner must also show "that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694.

A federal judge must "disqualify [herself] in any proceeding in which [her] impartiality might reasonably be questioned." 28 U.S.C. § 455(a). Section 455(a) has been termed the "catchall recusal provision, covering both interest or relationship and bias or prejudice grounds." *Liteky v. United States*, 510 U.S. 540, 548 (1994) (internal marks omitted). This is an objective inquiry into "whether a reasonable person perceives a significant risk that the judge will resolve the case on a basis other than the merits." *Hook v. McDade*, 89 F.3d 350, 353 (7th Cir. 1996); *see also Ramirez v. Elgin Pontiac GMC, Inc.*, 187 F. Supp. 2d 1041, 1044 (N.D. Ill. 2002). The moving party must

show that "an objective, disinterested observer fully informed of the reasons for seeking recusal would entertain a significant doubt that justice would be done in the case." *United States v. Barr*, 960 F.3d 906, 906 (7th Cir. 2020) (quoting *United States v. Herrera-Valdez*, 826 F.3d 912, 917 (7th Cir. 2016)) (internal marks omitted). In other words, "the search is for a risk substantially out of the ordinary." *Matter of Mason*, 916 F.2d 384, 386 (7th Cir. 1990).

## DISCUSSION

### I. Ineffective Assistance of Counsel

Vivirito argues he received ineffective counsel on a single ground: that prior counsel failed to move for the recusal of this Court prior to his sentencing. (Dkt. 2 at 9). An evidentiary hearing is not necessary to the Court's review of Vivirito's petition for a writ of habeas corpus; the briefs and records are sufficient. *Koons*, 639 F.3d at 354–55.

On the first prong of the *Strickland* test, Vivirito has failed to show that his prior counsel acted unreasonably in declining to move for this Court's recusal before sentencing. In support of this proposition, Vivirito attempts to characterize the Court's provision of therapy dogs to comfort victims and witnesses prior to or after testimony as "assistance to the U.S. Attorney's Office," that—according to Vivirito—raises concerns about *ex parte* communications between the Court and the government. (Dkt. 2 at 4).

Several factual problems arise with this erratic line of reasoning. First, and most importantly, the therapy dogs were never present for Vivirito's proceedings in front of this Court. Indeed, the Government confirms there was never even a *request* for the dogs to appear in the present case. (Dkt. 11 at 9). This should come as no surprise, given that Vivirito pleaded guilty and the victims did not attend his sentencing, though one victim's parent presented testimony. (Dkt. 2 at 3). Second, as a general matter, the dogs do not provide comfort exclusively to victims

6

and witnesses, instead making appearances throughout the courthouse that stretch far beyond individuals associated with the U.S. Attorney's Office, including visiting with juries and members of the public. Vivirito's own exhibits establish this fact. (*See* Dkt. 2-1 at 2, Press Release Regarding Bernese Mountain Therapy Dogs at the Courthouse; 2-2 at 3–4, Bloomberg Law Article About Dirksen Therapy Dogs). Vivirito's counsel may have reasonably decided against raising a motion for recusal based on these facts alone.

Furthermore, the U.S. Attorney's Office's Victim Witness Coordinator—not counsel—may inquire about the availability of the dogs on certain days and times. (*See* Dkt. 2-1 at 1–2). Vivirito's exhibits thus on their face demonstrate that such communications related to nothing more than scheduling, with nothing to suggest that the communications touched on any substantive matters—much less Vivirito's own case—before the Court. Additionally, communicating with counsel about scheduling matters in cases separate from the defendant's does not necessarily warrant recusal, either. *Staten v. Nissan N. Am., Inc.*, 134 F. App'x 963, 965–66 (7th Cir. 2005) (rejecting as "frivolous[ ]," "baseless," and "unsubstantiated" Staten's argument that the district judge should have recused himself after the court communicated with Nissan's counsel about a new trial date regarding a different case with the approval of Staten's counsel)*; see also Reed v. Rhodes*, 179 F.3d 453, 469 (6th Cir. 1999) (upholding the district judge's discretion in denying a motion for recusal based on ministerial *ex parte* communications that did not pertain to the parties as adversaries).

Still, Vivirito likens these scheduling communications to the *ex parte* communications in *United States v. Atwood*, which is readily distinguishable. 941 F.3d 883 (7th Cir. 2019); (Dkt. 2 at 12). In *Atwood*, a district court judge made over 100 *ex parte* communications with the United States Attorney's Office, which included congratulating and thanking certain prosecutors for

7

convincing the Seventh Circuit to affirm his decisions. *Id.* at 884. The Seventh Circuit remanded the case for sentencing in front of a new judge, finding that these communications—though they did not pertain to Atwood's case—raised doubt as to the judge's impartiality. *Id.* at 886. *see also Shannon v. United States*, 39 F.4th 868, 886 (7th Cir. 2022) (citing these same aspects of the ex parte emails in finding that concerns about the appearance of bias warranted resentencing). After learning of the judge's ex parte correspondence, the Chief Judge removed him from all cases involving that U.S. Attorney's Office, and the Judicial Council of the Seventh Circuit admonished the judge that his actions breached the Code of Conduct for United States Judges. *Id.* at 884-885.

The impropriety concerns in *Atwood* were so obvious that the need for reprimand could almost go without saying. In contrast, any conversation arising from this Court's agreement with the United States Attorney's Office consists solely of administrative matters relating to the therapy dogs. There is no evidence—only defendant's suggestions and speculation—that calls about the dogs' availability could touch on the substance of pending matters or otherwise raise the specter of partiality. See, e.g*., In re United States*, 666 F.2d 690, 694 (1st Cir. 1981) ("[A] judge once having drawn a case should not recuse [her]self on a unsupported, irrational, or highly tenuous speculation; where he or she to do so, the price of maintaining the purity of appearance would be the power of litigants or third parties to exercise a negative veto over the assignment of judges.").

Further, numerous courthouses throughout the country have facilities dogs, therapy dogs, and comfort dogs, as do many law schools.[2] The American Bar Association has gone so far as to

---

[2] American Bar Association, "Courtroom Dogs Help Ensure Victims' Voices Are Heard," Jan. 12, 2022, *available at* https://www.americanbar.org/groups/government_public/publications/public-lawyer/2022-winter/courtroom-dogs-help-ensure-victims-voices-are-heard/#1; American Kennel Club, "Courthouse Canines: Therapy Dogs Take the Stand," Jan. 22, 2018, *available at* https://www.akc.org/expert-advice/lifestyle/courthouse-canines-therapy-dogs-take-the-stand/; New Life K9s, "How Facility Service Dogs Help Crime Victims in Court Rooms," July 1, 2021, *available at* https://www.newlifek9s.org/post/how-facility-service-dogs-help-crime-victims-in-court-rooms; Elgin Courier-News, "Canine comforts drug court participants," Nov. 26, 2017, *available at* https://www.chicagotribune.com/suburbs/elgin-courier-news/ct-ecn-dog-therapy-kane-st-1124-20171121-story.html; The Hill.com, "Why dogs are becoming invaluable in the courtroom," *available at* https://thehill.com/changing-

adopt a resolution urging this practice.[3] The Northern District of Illinois court dogs were accepted as an addition to the courthouse environment under then-Chief Judge Ruben Castillo, were welcomed as a comforting addition to the courthouse under Chief Judge Rebecca Pallmeyer, and—since this Court took the post of Chief Judge—have continued to provide emotional support to all who enter the courthouse doors. Vivirito's own exhibits further demonstrate that informed and thoughtful observers would not perceive doubt, much less "significant doubt," that justice would be done in because of the presence of trained therapy dogs in this Court. *Barr*, 960 F.3d at 906; (Dkt. 2-1 at 1–2). No reasonable observer could think that this Court's facilitation of therapy dogs' work with victims, other visitors, and courthouse staff could give rise to a risk of seeming partiality that was "substantially out of the ordinary." *Mason*, 916 F.2d at 386. In sum, it would have been irresponsible of Vivirito's prior counsel to push this improper *ex parte* communications theory, and it was, in fact, the reasonable choice *not* to do so.

Vivirito attempts to bolster his speculation about the therapy dogs by also pointing to this Court's prior employment (almost 20 years ago) as an Assistant U.S. Attorney and this Court's expertise and "special interest" in the areas of child exploitation and trafficking while serving as a prosecutor and since. (Dkt. 2 at 6–11). The Seventh Circuit has made clear that prior experience as an assistant United States attorney does not require recusal, holding that recusal is unnecessary even when a judge worked on the *same* litigation in front of a court prior to joining the bench. *United States v. Ruzzano*, 247 F.3d 688, 694–96 (7th Cir. 2001), *overruled on other grounds by*

---

america/well-being/mental-health/474914-why-dogs-are-becoming-invaluable-in-the-courtroom/; *see also* Winnebago County and Boone County Court Volunteer Therapy Dog Program, *available at* https://www.17ththerapydogs.org/; Florida Courthouse Therapy Dogs, *available at* http://www.flcourthousedogs.com/; Anne Arundel County Circuit Court Dog Program, *available at* https://www.circuitcourt.org/learn-about/aacc-court-dog-program.
[3] American Bar Association, Feb. 22, 2021, *available at* https://www.americanbar.org/content/dam/aba/directories/policy/midyear-2021/101a-midyear-2021.pdf.

*Fowler v. Butts*, 829 F.3d 788, 795 (7th Cir. 2016). In light of *Ruzzano*, this prior work experience warrants no concern.

Moreover, the Seventh Circuit has explicitly addressed the question of whether this Court's knowledge of child exploitation matters creates issues during sentencing with a resounding "no." In *United States v. Modjewski*, the Seventh Circuit rejected a defendant's claim that this Court should have recused herself from sentencing after she questioned an expert witness based on her expertise in exploitation and trafficking matters. 783 F.3d 645, 651 (7th Cir. 2015) (holding that because "all of the information [this Court] knew [in the area of child exploitation] was available to the general public" and were not extrajudicial facts about defendant or his case, there was no need for recusal). The Court of Appeals reasoned that "[t]o find recusal necessary here, we would punish the judge for being well-informed." *Id.* at 652. At a minimum, *Modjewski* established that this Court may continue to sentence crimes like Vivirito's that directly implicate her expertise. To hold otherwise would require this Court to recuse itself from every child exploitation and trafficking matter before it and to foist all such cases on other judges in the district.

Indeed, numerous courts, including the Seventh Circuit, have rejected the notion that judges' generalized views or participation in policy matters necessitate recusal. *See, e.g.*, *id.*; *Baker & Hostetler LLP v. U.S. Dep't of Com.*, 471 F.3d 1355, 1358 (D.C. Cir. 2006) ("judges who previously participated in policy matters and provided policy advice in government do not ordinarily recuse in litigation involving those policy issues"); *Southern Pac. Communication v. AT&T*, 740 F.2d 980, 991 (D.C. Cir. 1984) ("If a judge approached every case completely free of preconceived views concerning the relevant law and policy, we would be inclined not to applaud his impartiality, but to question his qualification to serve as a judge."); *United States v. Alabama*, 828 F.2d 1532, 1543 (11th Cir. 1987) (per curiam) ("All judges come to the bench with a

10

background of experiences, associations, and viewpoints. . . . A judge is not required to recuse himself merely because he holds and has expressed certain views on a general subject.") (internal citations omitted).

Moreover, this Court's views about the importance and protection of victims, referenced by Vivirito in an attempt to conjure the appearance of bias, comport with the law; and "[a] judge cannot be disqualified merely because [s]he believes in upholding the law[.]" *Baskin v. Brown*, 174 F.2d 391, 394 (4th Cir. 1949); see, e.g., 18 U.S.C. § 3771 (Crime Victim Rights Act) (enumerating rights of crime victims, including the "right to be treated with fairness and with respect"); 18 U.S.C. § 3509 (providing alternatives to live in-court testimony by child witnesses and victims, requiring protection of identity of child witnesses and victims, and authorizing use of multidisciplinary child abuse teams to assist child witnesses and victims, among other things).

No combination of this Court's expertise, therapy dogs, or prior work experience would have justified recusal before Vivirito's sentencing. Prior counsel, therefore, acted within reason when they declined to file a motion for recusal. Stated another way, Vivirito cannot legitimately argue that his legal representation fell below *Stickland*'s highly deferential standard of objective reasonableness. The Petition fails at the outset because Vivirito cannot satisfy the first prong of the *Strickland* test. Even in the alternative, though, Vivirito could not string together a reasonable argument as to the second.

Recall that this Court applied a downward variance to Vivirito's sentence from the appropriate Guidelines range. The Seventh Circuit has stated that a sentence receives a near irrebuttable presumption of reasonableness when it falls below the Guidelines range. *United States v. Oregon*, 58 F.4th 298, 302 (7th Cir. 2023) (quoting *United States v. Miller*, 829 F.3d 519, 527 (7th Cir. 2016)). This presumption applies here. Vivirito's sentence was 24 months below the

11

advisory Guidelines sentence (of 20 years' imprisonment). *See Thomas v. Dart*, 39 F.4th 835, 844 (7th Cir. 2022) ("By itself, an adverse judicial ruling does not provide a valid basis for questioning a judge's impartiality."). Further, it is a strange argument to suggest bias against a Judge who, in her discretion, selected a sentence below the maximum available. Further, in accepting Vivirito's plea agreement, this Court allowed him to plead to a count with a lower statutory maximum sentence, notwithstanding the significantly higher Guidelines range that would otherwise apply. This Court also granted, over the government's objection, Vivirito's motion to remain on pretrial release pending his sentencing, commenting that the Court was "impressed with the treating providers who are showing that [defendant is] making some significant progress" and explaining that the Court "[did not] want to disrupt that while I have him being treated." (Case No. 19-CR-00728-1, Dkt. 168 at 37, hereinafter "Sentencing Transcript").

Under these circumstances, Vivirito cannot show, under the "highly deferential" standard that applies in judicial scrutiny of counsel's performance, that his prior counsel's declining to move for recusal fell outside the "wide range of reasonable professional assistance." *Strickland*, 466 U.S. at 689. If anything, even a lawyer entertaining the idea of a recusal motion might have anticipated that a different, reasonable judge may have simply imposed the statutory maximum because it fell below the Guidelines. This Court, however, settled on an 18-year sentence to acknowledge both the severity of the crime and Vivirito's health issues. Unless he intends to argue for a longer sentence, Vivirito cannot show with any degree of certainty that recusal would have impacted the

outcome of his sentencing. The record thus supports prior counsel's strategic decision not to (unsuccessfully) seek recusal following defendant's change of plea and prior to sentencing.

## II. Motion for Recusal

Vivirito's separate motion for recusal fails for similar reasons. First and foremost, the Section 455(a) Motion relies on the same arguments as the § 2255 petition, and thus fails on the merits. As previously stated, no combination of Vivirito's arguments would require this Court to recuse herself. And even in the alternative, to determine whether a purported violation of Section 455(a) was harmless error, courts look to: (1) the risk of injustice to the parties in this case, (2) the risk of injustice to parties in future cases, and (3) the risk of undermining public confidence in the judicial process. *Liljeberg v. Health Servs. Acquisition Corp.*, 486 U.S. 847, 864 (1988).

As to the first factor, the Court imposed a below-Guidelines sentence in light of the Section 3553(a) factors, which functionally forecloses Vivirito's fairness arguments without a separate demonstration of bias, which was not present here. Re-doing the proceeding would also undercut the closure and sense of justice for the victims and their families in this proceeding. The second factor is foreclosed for many of the same reasons, laid out above, that it would be improper for judges to not oversee any case that would possibly draw on their own life experiences. Nor should this Court wish to discourage other judges from publishing, teaching, and speaking about combatting child exploitation and trafficking, or protecting and comforting child victims and witnesses – all laws that have been enacted by Congress and which this Court is obligated to follow. Finally, there would be far more harm to the public's confidence in the impartiality of the judiciary if horrific criminal behavior—of the type that Vivirito admitted in his plea agreement—could override a justice system that acknowledges the needs and lived experiences of victims of those crimes.

13

Furthermore, the Motion advocates for an evidentiary hearing. The record and briefs, however, prove that no hearing is necessary. A petitioner has no right to discovery or an evidentiary hearing on a Section 2255 claim unless he makes a "substantial threshold showing," a high standard that the present Motion did not begin to approach. *Wade v. United States*, 504 U.S. 181, 186 (1992).

## CONCLUSION

For the reasons above, the Court denies Vivirito's motion to vacate, set aside, or correct his sentence under 28 U.S.C. § 2255. Likewise, the Court also denies Vivirito's separate motion for recusal under 28 U.S.C. § 455.

Virginia M. Kendall
United States District Judge

Date: February 9, 2026